UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT STILL,<br><br>            Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>            Defendant. | No. 4:14-CV-5096-LRS<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 18) and the Defendant's Motion For Summary Judgment (ECF No. 21).

**JURISDICTION**

Robert Still, Plaintiff, applied for Title II Disability Insurance benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on June 4 and June 13, 2005, respectively. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing and one was held on August 2, 2010, before Administrative Law Judge (ALJ) R.J. Payne via video. Plaintiff, represented by counsel, testified at this hearing. Anthony E. Francis, M.D., and Marian F. Martin, Esq., testified as medical experts. At the hearing, Plaintiff amended his onset date to a closed period of disability from January 25, 2004, through December 29, 2005. ALJ Payne rendered an unfavorable decision on August 13, 2010, which was appealed to the Appeals Council. The Appeals Council remanded the matter for

**ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT- 1**

further development of the record and a new hearing was held on November 8, 2012, before ALJ Payne. Plaintiff, represented by counsel, testified at this hearing, as did Jinnie Lawson as a Vocational Expert (VE). On January 25, 2013, the ALJ issued a decision finding the Plaintiff not disabled and denying him benefits. The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a high school education and past relevant work experience as a sales representative and as a telemarketer. Plaintiff alleges a closed period of disability from January 25, 2004, through December 29, 2005. During that period, he was 44-45 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in not finding Plaintiff disabled during the closed period by: 1) improperly discounting the opinions of the examining psychologists, and 2) improperly discounting Plaintiff's credibility regarding his mental limitations.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 3**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the

national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that during Plaintiff's alleged closed period of disability: 1) Plaintiff had severe impairments, including musculoskeletal impairment of the spine, attention deficit hyperactivity disorder (ADHD), and dysthymic disorder; 2) Plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff had the residual functional capacity (RFC) to perform work that did not involve lifting or carrying more than a maximum of 10 pounds frequently or more than a maximum of 20 pounds occasionally, or standing and/or walking for more than a total of 6 hours; he had moderate limitations in the ability to understand, remember and carry out detailed instructions, but was able to understand, remember, and carry out short and simple instructions and remember locations and work like procedures; he had moderate difficulty maintaining attention and concentration for extended periods and interacting with supervisors; he had mild to moderate limitations in the ability to interact with the public and get along with coworkers and peers without being distracted by them; and he was able to respond appropriately to changes in the work setting;[1] 4) Plaintiff's RFC prevented him from performing his past relevant work; and 5) Plaintiff's RFC allowed him to perform other jobs existing in significant numbers in the national economy, including laundry worker, housekeeper/cleaner, copy machine operator, and document preparer. Accordingly, the ALJ concluded the Plaintiff was not disabled between January 25, 2004, and December 29, 2005.

---

[1] The ALJ defined "mild" as minimal ability to interference to function in a work setting, and "moderate" as occasional interference on the ability to function in the work setting. (Tr. at p. 24).

**MEDICAL SOURCE OPINIONS**

On September 2, 2004, Philip G. Barnard, Ph.D., a psychologist, examined the Plaintiff. On September 24, 2004, Dr. Barnard completed a Washington Department of Social and Health Services (DSHS) evaluation form in which he diagnosed Plaintiff with ADHD, dysthymic disorder, and mathematics disorder. (Tr. at p. 210). He indicated that Plaintiff was moderately limited in his abilities to understand, remember and follows complex (more than two step instructions); learn new tasks; and exercise judgment and make decisions. (Tr. at p. 211). For the purposes of this evaluation, "moderate" limitations are those which result in a "[s]ignificant interference with basic work-related activities." (Tr. at p. 209). Dr. Barnard wrote that Plaintiff had "[p]roblems with attention and concentration," difficulty in learning new tasks," and that he was "emotionally explosive" and "depressed" which exacerbates problems with attention and concentration." (Tr. at p. 211). Dr. Barnard also indicated Plaintiff had "moderate" limitations in his abilities to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior. He wrote that Plaintiff was "anxious and depressed" and that he had a "low frustration tolerance." (*Id*.). Dr. Barnard also indicated that "[w]ithin 6 mo period of time with treatment[,] Mr. Still should be able to return to gainful employment." (Tr. at p. 212). The anticipated treatment included psychotropic medication, individual counseling every other week, and a referral to the DVR (Division of Vocational Rehabilitation) for re-training. (*Id*.). Dr. Barnard noted Plaintiff had yet to receive any mental health treatment. (*Id*.). He also noted that the cognitive and social functional limitations opined by him would last a maximum of 12 months and a minimum of 6 months. (*Id*.).

Subsequently, Plaintiff was seen at La Clinica Community Health. In December 2004, Valerie Krause, M.D., noted Plaintiff was being treated with

Strattera for his ADHD which Plaintiff indicated had improved his focus and concentration. (Tr. at p. 237). Dr. Krause also observed that:

> He does complain of a worsening mood, however. His mood is poor. He feels sleepy all the time and just wants to stay in bed. He can get necessary things done but things that are not 100% necessary, he will not even attempt to start these tasks or finish them. He feels his energy and appetite is okay. He has never been treated for depression in the past. He notes he commonly has poor mood over the holiday season, although this is worse than in the past. December 2, 2004 is the birthday of a daughter that he no longer has visitation rights to and this depresses him very much. He has had some thoughts about harming himself or suicide including cutting himself with a knife or choking himself with fishing wire, but he had never had any suicide attempts. He is not having these thoughts actively over the past week, and he has no plans to carry out. He does live with his wife. He has not expressed to her any of the suicidal thoughts, but does talk to her about his mood.

(Tr. at p. 237).

As a result, Dr. Krause started Plaintiff on Prozac for "symptoms of major depressive disorder with some suicidal thoughts but no active plan or intent." (Tr. at p. 237).

On January 5, 2005, Sergio Flores, M.D., at La Clinica, noted that Plaintiff was "doing well on fluoxetine[2]" and "denies any suicidal ideation." (Tr. at p. 239). Plaintiff also reiterated that "his attention is much improved with the use of Strattera." (*Id*.). On January 20, 2005, Dr. Krause indicated that Plaintiff was "doing well on medication," noting that:

> He feels his mood is great, his focus, concentration and reading comprehension are at a level where they have never been. He is enjoying doing things such as reading that he has never done before. He has no suicidal or homicidal ideation. His only side effect is a bit of fatigue.

(Tr. at p. 240).

In May 2005, Plaintiff saw Dr. Flores again. The doctor's assessment was:

---

[2] Generic name for Prozac.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 7**

> Depression is stable. Continue with fluoxetine at the same dose.
>
> Attention deficit disorder of the adult, stable. Continue Strattera. He feels psychologically and emotionally stable. He denies any suicidal ideation. He has not seen any psych doctors since September 2004, I recommended him that ideally he should have followup by psychiatry on a regular basis. Psych consultation done today.

(Tr. at p. 241).

In June 2005, Dr. Flores reported Plaintiff's depression was stable and that he denied any suicidal ideation. (Tr. at p. 243). In July 2005, however, Dr. Flores reported that Plaintiff had "been crying often in the last two weeks in spite of taking his medication" and had "called this clinic . . . to see if he would be able to increase the dose of his medication for depression." (Tr. at p. 245). Plaintiff denied any suicidal ideation, but Dr. Flores decided to increase Plaintiff's dosage of fluoxetine. (*Id*.).

On September 27, 2005, Plaintiff was psychologically examined by Jan M. Kouzes, Ed.D.. Dr. Kouzes indicated that information for her evaluation was gathered by reviewing Dr. Barnard's evaluation and "a Mental Disability Report recently provided by the Social Security Administration (Form SSA-3368)." (Tr. at p. 213).[3] Dr. Kouzes concurred with Dr. Barnard's diagnoses and assigned the Plaintiff a current Global Assessment of Functioning (GAF) score of 55. (Tr. at p. 215). A GAF score between 51 and 60 indicates "moderate symptoms" or "moderate" difficulty in social, occupational, or school functioning. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34). Dr. Kouzes noted that Plaintiff's assessment was that "psychotropic medication seems to have helped him stabilize his mood and improve his sense of well-being." (Tr. at p. 215). Nevertheless, the doctor opined that

---

[3] It is not clear to which SSA "Mental Disability Report" Dr. Kouzes was referring.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 8**

"[w]ithout individual counseling, proper medication and vocational rehabilitation, Mr. Still's prognosis is assessed to be guarded." (*Id*.).  Dr. Kouzes added the following:

> Mr. Still demonstrated a fair ability to reason.  Although he showed a fair ability to communicate and appears to have appropriate insight into his psychological and physical problems, his present issues of depression, anxiety, anger, emotional lability and impulsivity, and past history of criminal behaviors make his recovery to a normal life and productive work a difficult task.  Continuous individualized counseling, close monitoring, and proper medication will likely be necessary and important to help stabilize his condition and to improve his well-being.

(Tr. at p. 216).

In early October 2005, Sharon Underwood, Ph.D., completed a Mental RFC assessment and a Psychiatric Review Technique form based on her review of the record.  It does not appear, however, that she had the benefit of Dr. Kouzes' evaluation as she concluded there was "[i]nsufficient evidence for mental prior to 9/24/04, went back 3 mos. for start of sufficient evidence 6/04." (Tr. at p. 218).  She concluded the Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in his ability to interact appropriately with the general public; and in his ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. at pp. 217-18).  Dr. Underwood wrote:

> Capable of simple and complex tasks according to ability shown on cognitive tasks.  However, cognitively he would do poorer if he was working beyond his physical comfort.  Able to interact appropriately with others in formal situations.  Currently stable on medications.  Would do best with only occasional work with the public due to history of irritability.

(Tr. at p. 218). Consistent therewith and in regard to the "B" Criteria of the Listings in the Psychiatric Review Technique form, Dr. Underwood indicated Plaintiff had

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9**

moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and was mildly restricted in his activities of daily living. (Tr. at p. 231).

Psychologist Marian F. Martin, Ph.D., testified at the August 2010 administrative hearing regarding Plaintiff's mental condition during the alleged closed period of disability. In conjunction with her testimony, Dr. Martin completed a Psychiatric Review Technique form. In it, she concluded that Plaintiff had a "mild" limitation in terms of performing activities of daily living and in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence or pace. (Tr. at p. 277). Dr. Martin noted that there were no records indicating any counseling or psychiatric treatment, other than the Plaintiff taking medication. (Tr. at p. 279). The doctor opined that Dr. Kouzes' evaluation indicated "adequate social functioning, with participation in church activities and with friends." (*Id.*).

Dr. Martin also completed a "Mental Medical Source Statement" in which she indicated Plaintiff had "moderate" limitations in his abilities to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to accept instructions and respond appropriately to criticism from supervisors. (Tr. at pp. 281-82). With regard to Plaintiff's ability to work in coordination with or proximity to others without being distracted by them, Dr. Martin indicated the limitation ranged from mild ("no significant limitation"), to "moderate." (Tr. at p. 282). In the narrative portion of the "Mental Medical Source Statement," under the section titled "Mental Functional Capacity Assessment," Dr. Martin wrote:

> Claimant should not have significant difficulty remembering locations and work-like procedures. He should be able to understand, remember and carry out short, simple instructions. Claimant may have moderate difficulty understanding, remembering and carrying out detailed instructions. He may have moderate difficulty maintaining attention and concentration for extended periods. He may have mild to moderate difficulty working in coordination with or proximity to others without being distracted by them. Claimant should not have more than mild difficulty

**ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT- 10**

> performing activities within a schedule or completing a normal workday and workweek without interruptions from psychologically based symptoms.
>
> Claimant may have moderate difficulty interacting with supervisors, but he should not have more than mild difficulty interacting with the public and getting along with peers without distracting them. He should have no more than mild difficulty maintaining socially appropriate behavior. He should have no difficulty requesting assistance and asking simple questions.
>
> Claimant is not likely to have more than mild difficulty responding to changes in the work setting. He should not have difficulty setting realistic goals, being aware of normal hazards or traveling in unfamiliar places.

(Tr. at p. 283).

At the administrative hearing, Plaintiff's counsel noted that Dr. Underwood had indicated Plaintiff was "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at p. 218), whereas Dr. Martin indicated there was "no significant limitation." (Tr. at p. 282). Dr. Martin's response was:

> Well, I guess I did not feel that his diagnosis would reach the level that would interfere to a moderate level with the, you know, with the normal work week; you know, a normal work day, because of psychological symptoms. So a dysthymic disorder is a sort of chronic mild level of depression. It looked like it was responding well to medication. And ordinarily, it should not interfere significantly with a work setting.

(Tr. at p. 471).

Dr. Martin testified she disagreed with Dr. Barnard's assessment of a moderate limitation with regard to interacting with the public and co-workers because there were other indications he was interacting appropriately in other settings such as his church, bible study groups and volunteering. (Tr. at p. 472). She did not believe that getting along with co-workers was an issue for the Plaintiff. (*Id*.).

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 11**

because of his/her familiarity with the claimant and his condition. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

In his January 25, 2013 decision, ALJ Payne had this to say about the opinions of Drs. Barnard and Kouzes:

> Some weight has been given to Dr. Barnard's September 2004 opinion that the claimant had moderate limitations in the ability to understand, remember and follow complex instructions, learn new tasks; exercise judgment and make decisions; relate appropriately to coworkers, supervisors and in public contacts; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and maintain appropriate behavior. However, it is noted this opinion was given prior to the claimant's alleged period of disability and before he was begun on Strattera and Prozac. Evidence during the pertinent period establishes the claimant was not as limited as Dr. Barnard thought.
>
> In light of the claimant's good response to medication, the undersigned does not give significant weight to Dr. Kouzes' opinion that the claimant had issues of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 12**

>depression, anxiety, anger, emotional lability, impulsivity, and history of criminal behavior that made recovery to a normal life and productive work a difficult task. Some weight is given to Dr. Kouzes' opinion that the claimant had fair ability to reason, adequate social functioning, fair ability to communicate and appropriate insight.
>
>At the prior hearing on August 2, 2010, Dr. Martin persuasively testified the claimant had a number of moderate mental limitations, as outlined above. In light of the longitudinal evidence of record, significant weight is given to Dr. Martin's opinion.
>
>The opinions of the non-examining State agency medical and psychological consultants tend to support the claimant's ability for the wide range of light work outlined above during the alleged closed period of disability.

(Tr. at pp. 28-29).

The non-exertional mental limitations which ALJ Payne presented to the VE in his hypothetical to her were taken essentially verbatim from the narrative contained in Dr. Martin's August 2, 2010 "Mental Medical Source Statement."

There is no question the ALJ erred in stating that Dr. Barnard's evaluation was rendered prior to the alleged period of disability. Indeed, it was rendered some nine months after the alleged onset date of January 25, 2004. Nevertheless, the ALJ was accurate in stating that Dr. Barnard's evaluation occurred prior to Plaintiff taking Strattera and Prozac. This is evident from Dr. Barnard's evaluation itself. The records from La Clinica, which prescribed the medication for Plaintiff, clearly reveal an improvement in Plaintiff's mental condition such that by early January 2005, Plaintiff had achieved stability with regard to both his ADHD and depression and denied further suicidal ideation which he had expressed to Dr. Krause in December 2004. This stability continued through June 2005. While it is true that in July 2005, Plaintiff indicated he had "been crying often in the last two weeks in spite of taking his medication," he continued to deny any suicidal ideation and Dr. Flores increased Plaintiff's dosage of fluoxetine. Notes from subsequent appointments at La Clinica in August and November 2005 suggest the increased dosage of fluoxetine was helpful

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

to the Plaintiff. (Tr. at pp. 246 and 251).[4]

Dr. Kouzes acknowledged the medication had helped Plaintiff's mood and improved his sense of well-being. It is true she indicated Plaintiff's prognosis was guarded "[w]ithout individual counseling, proper medication and vocational rehabilitation," but all indications were that Plaintiff was receiving "proper medication" and approximately three months later, he returned to substantial gainful employment as a janitor at Wal-Mart without the benefit of any counseling or vocational rehabilitation. (Tr. at pp. 484; 501-02). Furthermore, Dr. Kouzes did not provide as specific an analysis of Plaintiff's functional limitations as Dr. Barnard did, and so it cannot be assumed she fully agreed with the pre-medication limitations expressed by him, even though she agreed with his diagnoses. Indeed, it is not apparent that Dr. Kouzes would have necessarily disagreed with the functional limitations subsequently opined by Dr. Martin at the August 2010 administrative hearing.

The ALJ provided specific and legitimate reasons, supported by substantial evidence, to not give full weight to the opinions of Drs. Barnard and Kouzes, and to adopt the limitations expressed by Dr. Martin which are supported by and consistent with other evidence in the record, as discussed below.

**CREDIBILITY**

An ALJ can only reject a plaintiff's statement about limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so. *Smolen,* 80 F.3d at 1283-84. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements

---

[4] None of the La Clinica doctors offered an assessment regarding Plaintiff's functional limitations and his ability to return to gainful employment.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

in her testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

The ALJ provided clear and convincing reasons supported by substantial evidence to find Plaintiff not entirely credible regarding his testimony about his functional mental limitations. This is borne out by Plaintiff's own reporting to his doctors once he commenced taking medication. In December 2004, Plaintiff told Dr. Krause that with regard to his ADHD, Strattera had improved his focus and concentration such that he could more meaningfully participate in his Bible study class. (Tr. at p. 237). By January 20, 2005, after he had started Prozac for his depression, it was reported by Plaintiff that "his mood is great, his focus, concentration, and reading comprehension are at a level where they have never been. He is enjoying doing things such as reading that he [h]as never done before. He has no suicidal or homicidal ideation." (Tr. at p. 240). In May 2005, he reported his ADHD and depression were "much improved with medication," he denied any suicidal ideation, his relationship with his wife was good, and his mood was much better. (Tr. at p. 241). In a subsequent appointment at La Clinica in August 2005, Plaintiff reported that apart from pain in his left ear, he was feeling fine. (Tr. at p. 246). And in November 2005, Plaintiff indicated that with his increased dosage of Prozac, he was able to "maintain a better mood, less depression, no suicidal thoughts," and that he was also doing well with his current dose of Strattera for ADHD and had "no other significant complaints." (Tr. at p. 251).

Nothing that Plaintiff told Dr. Kouzes was inconsistent with the aforementioned. He told the doctor that he "plays mahjong on the computer for an hour or longer and watches news on TV;" "does some reading on the computer in the

evening before going to bed:" and "can completely care for himself, including personal hygiene." (Tr. at p. 215). Even more significantly, Dr. Kouzes reported:

> Mr. Still appears to have adequate social functioning beyond his interaction with his immediate family. He indicated that [he] goes to church every Sunday and volunteers as an usher. He stated he has a few friends and participates in a bible study group every week. He said he does not like to talk on the phone. As for his favorite pastimes, he indicated that he enjoys fishing, hiking, camping, playing games on the computer, repairing computers, and taking and developing photographs.

(Tr. at p. 215).

Dr. Martin's RFC accords with Plaintiff's own statements about his mental condition after he commenced taking medication for ADHD and depression. This is the RFC which was presented in the hypothetical question posed by the ALJ to the VE (Tr. at pp. 509-12) to which the VE responded by identifying certain jobs existing in significant numbers in the national economy. (Tr. at pp. 513-14).[5]

## CONCLUSION

Substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled for a continuous period of twelve months during the time from January 25, 2004 to December 29, 2005. The evidence supports more than one rational interpretation and therefore, the decision of the ALJ must be upheld. No later than January 5, 2005, and perhaps earlier, Plaintiff had the RFC, as determined by the ALJ, to perform other jobs existing in significant numbers in the national economy.

---

[5] Plaintiff does not specifically raise an issue about the propriety of the ALJ's hypothetical to the VE nor the VE's response thereto. Under cross-examination by Plaintiff's counsel, the VE explained why she believed the functional limitations presented by the VE allowed Plaintiff to perform the jobs identified by her (Tr. at pp. 519-524).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 16**

1 | Defendant's Motion For Summary Judgment (ECF No. 21) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 18) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___26th___ of June, 2015.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 17**